I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY FIRST CLASS MAIL POSTAGE PREPAID, TO ALL COUNSEL (OR PARTIES) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF RECORD IN THIS ACTION ON THIS DATE.

DATED: 9-10-10

DEPUTY CLERK

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

SEP 10 2010

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| MARK F. SHEHATA<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MATTHEW CATE, et al.,<br><br>　　　　Defendants. | Case No. EDCV 10-1246-RGK (MLG)<br><br>MEMORANDUM AND ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |

On August 30, 2010, Plaintiff Mark Shehata filed this pro se civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that the Director of the California Department of Corrections and 15 Doe Defendants[1] violated his right to be free from cruel and unusual punishment by acting with deliberate indifferent toward his serious medical needs. He alleges that the unconstitutional conduct by Defendants occurred between August 2008 and July 2009 while he was a state prisoner incarcerated at the California Institute for Men ("CIM"), Chuckawalla Valley State Prison ("CVSP"), and Avenal State

---

[1] The Doe Defendants are identified as wardens (Does 1-3), chief medical officers (Does 4-6), and medical staff (Does 7-15) at the three state prisons at which Plaintiff was incarcerated.

Prison ("ASP").² Each Defendant is sued in his or her individual and official capacity.

## I. Facts

Although Plaintiff's allegations are vague and fail to identify any prison medical staff person by name, it appears that he was dissatisfied with the documentation of his medical history as well as the care and medication he received related to an endoscopy and resulting throat injury.

On July 30, 2008, while he was incarcerated at CIM, Plaintiff experienced chest pains and was sent to the health clinic. When asked by a physician about his medical history, Plaintiff reported that his father died of heart disease. (Decl. of Mark F. Shehata ("Shehata Decl.") ¶¶ 5-7.) Thereafter, Plaintiff was sent to the local emergency room for tests. He was given 21 medications and released after three days. (*Id.* ¶¶ 8-9.) On November 30, 2008, Plaintiff again experienced chest pains and was sent to the local emergency room by CIM medical staff. He was again tested, given medications, and released back to CIM. (*Id.* ¶¶ 10-12.)

Sometime during HIS incarceration at CIM, Plaintiff noticed that the medical history he had reported about his father had been recorded as his own personal medical history. Plaintiff asked the medical staff at CIM to change the notation and was told it would be "taken care of immediately." (*Id.* ¶¶ 13-14.)

At another unidentified time during Plaintiff's incarceration

---

² Plaintiff is now a parolee under the supervision of the California Department of Corrections in Parole Region III. (Decl. Of Mark Shehata ("Shehata Decl.") ¶ 3.)

at CIM, the medical staff informed him that he had a colon problem. He was sent to the local hospital for testing. According to Plaintiff, "the doctor inserted a scope down through my throat to the colon area. As the scope proceeded down my throat, I felt a sharp pain at which the doctor acknowledge[d] was caused by the scope, and [the local hospital physician] assured me it would heal rather rapidly." (*Id.* ¶¶ 17-18.) When Plaintiff returned to CIM and complained about the throat injury, CIM medical staff gave Plaintiff "a Psychotropic medication to relax [his] stomach." Plaintiff complained that the medication did not help, and CIM doctors told him that the throat injury would take a long time to heal. He was then transferred to CVSP and told he "would be treated correctly there." (*Id.* ¶¶ 20-22.)

Upon arrival at CVSP, the medical staff informed Plaintiff that CIM had sent him to the wrong institution and would need to be transferred "to a full service medical facility" due to the fact that he had been given psychiatric medication. He was transferred to ASP three months later. (*Id.* ¶¶ 23-24.)

At ASP, the medical staff "again" misread Plaintiff's medical history and documented his father's heart condition and surgeries as Plaintiff's personal medical history. Plaintiff was ignored when he tried to correct the mistake. (*Id.* ¶¶ 25-26.)

Sometime thereafter, Plaintiff was sent to Bakersfield Hospital where he was given Gabapentin "to relax [his] throat." According to Plaintiff, "another doctor (Does 7-15) decided to cancel this medication" without explanation. Plaintiff complained and was put back on Gabapentin, but the "same doctor" then cancelled all of Plaintiff's medications. Plaintiff complained again and "another

doctor (Does 7-15) got the medications renewed." (*Id.* ¶¶ 27-31.)

Plaintiff asserts that, "to this day," he experiences an "irritation and choking sensation" in his throat. (*Id.* ¶ 19.)

## II. Discussion and Analysis

### A. Duty to Screen

The Court has screened the complaint prior to ordering service in order to determine whether the action is frivolous or malicious, fails to state a claim upon which relief could be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). The Court's screening of the Complaint under the foregoing statute is governed by the following standards. A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Since Plaintiff is appearing pro se, the Court must construe the allegations of the Complaint liberally and must afford Plaintiff the benefit of any doubt. *See Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).

Moreover, in determining whether a complaint states a claim on which relief may be granted, allegations of material fact are taken as true and construed in the light most favorable to the Plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiff is required to present factual allegations sufficient to state a plausible claim for relief. *Iqbal*, 129 S.Ct. at 1949-50.

### B. To The Extent Plaintiff Sues Each Defendant In His Or Her Official Capacity, He Has Failed To State A Claim Upon Which Relief May Be Granted

As noted, Plaintiff sues Cate and each of the 15 Doe Defendants in their official capacities. Plaintiff is seeking monetary damages. (*See generally*, Compl.) The Eleventh Amendment states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. Despite the absence of a textual reference to suits by individuals against their own states in federal court, the Supreme Court has long interpreted the Eleventh Amendment to bar such actions. *Hans v. Louisiana*, 134 U.S. 1, 15 (1890). Absent a waiver of Eleventh Amendment immunity, a state may not be sued in federal court. *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999); *see also Quillin v. Oregon*, 127 F.3d 1135, 1138 (9th Cir. 1997)(per curiam). This immunity extends to suits against state officers acting in their official capacities, because such suits target not the official, but rather the official's office. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984).

There is no indication that California or its officers have waived immunity, nor did Congress waive the state's immunity pursuant

to its remedial enforcement powers under the Fourteenth Amendment. Accordingly, to the extent Plaintiff has asserted claims against Cate and Does 1-15 in their official capacities, he has failed to state a claim upon which relief can be granted.

**C. Plaintiff Has Failed To State A Claim Upon Which Relief May Be Granted Against Defendant Cate and Doe Defendants 1-6**

Plaintiff alleges that seven supervisory officials are liable for alleged constitutional violations by the other defendants. The only named Defendant, Matthew Cate, is the Director of CDC and is allegedly liable because he was "responsible for daily operations at all State Prisons while Plaintiff was in his custody." (Compl. at 1-3.) Does 1 through 3 are identified as the wardens of the three institutions at which Plaintiff was incarcerated, and are allegedly liable because they were responsible for daily operations at CIM, CVSP, and ASP, respectively. Plaintiff identifies Does 4 through 6 as the chief medical officers at CIM, CVSP, and ASP, and they are allegedly liable because they were "responsible for the Medical Departments" at each of those institutions while he was incarcerated. (*Id.*)

To the extent that Plaintiff is alleging Cate and Does 1 through 6 are liable due to their supervisory roles over the other defendants, he has failed to state a claim upon which relief may be granted. Supervisory officials are generally not responsible for the conduct of their subordinates on a theory of vicarious liability in civil rights actions brought under 42 U.S.C. § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-92 (1978); *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001); *Bibeau v. Pac. Nw. Research Found., Inc.*, 188 F.3d 1105, 1114 (9th Cir. 1999); *Terrell v. Brewer*, 935

F.2d 1015, 1018 (9th Cir. 1991). A supervisory official may be liable under section 1983 only if he was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Jeffers*, 267 F.3d at 915; *Redman v. County of San Diego*, 942 F.2d 1435, 1446-47 (9th Cir. 1991); *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989).

Here, Plaintiff has failed to allege any personal involvement of Cate or Does 1-6 in the acts giving rise to the alleged constitutional violation. Instead, Plaintiff makes broad allegations of responsibility based upon the status of each of those defendants as "responsible" for the daily operations of large institutions. However, there can only be liability under section 1983 if there is an affirmative link or connection between the defendant's actions and the claimed injury. *Rizzo v. Goode*, 423 U.S. 362. 372-73 (1976). Therefore, absent a showing of personal involvement or some causal connection between the conduct of Cate or Does 1 through 6 and the alleged constitutional violation, there is no basis upon which any of them can be found liable under section 1983. Accordingly, Matthew Cate and Does 1 through 6 must be dismissed as defendants.

D. **Plaintiff Has Failed To State An Eighth Amendment Claim Against Does 7-15**

Plaintiff alleges that Does 7-15, only identified as "medical staff," were deliberately indifferent to his serious medical needs because they were "responsible for the treatment and care of Plaintiff while Plaintiff was housed at their respective Prison or Institution." (Compl. at 4.) He alleges that Does 7-15 "failed to provide adequate medical treatment and care, and/or interfer[ed] with

prescribed medical treatment and care, and prescribed medications." (*Id.* at 5.)

Under the Eighth Amendment, the government has an obligation to provide medical care for prisoners. *Estelle v. Gamble*, 429 U.S. 97 (1976). However, not every breach of that obligation is of constitutional magnitude. In order to succeed on an Eighth Amendment medical care claim, Plaintiff must show "deliberate indifference to serious medical needs." *Id.* at 104.

In the Ninth Circuit, the deliberate indifference test is comprised of two parts. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *McGuckin v. Smith*, 974 F.2d 1050 (9th Cir. 1991), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc). Plaintiff must first show the existence of a "serious medical need." "Examples of serious medical needs include 'the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" *Lopez* 203 F.3d at 1131 (quoting *McGuckin*, 974 F.2d at 1059-60).

In addition, Plaintiff must show that the defendant's response to this need was deliberately indifferent. *Jett*, 439 F.3d at 1096. Prison officials may be deliberately indifferent to a prisoner's serious medical needs when they delay, deny or intentionally interfere with medical treatment. *Id.*; *Hamilton v. Endell*, 981 F.2d 1062, 1066 (9th Cir. 1992) (overruled on other grounds). Deliberate indifference exists only where the prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *accord Jackson v. McIntosh*, 90

F.3d 330, 332 (9th Cir. 1996); *McGuckin*, 974 F.2d at 1060 ("A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established.").

Under this standard, neither an inadvertent failure to provide adequate medical care, nor mere negligence or medical malpractice, rise to the level of a constitutional violation. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Moreover, a plaintiff's disagreement with the type and adequacy of the medical treatment that he was provided does not rise to the level of a constitutional violation. *Estelle*, 429 U.S. at 107 (complaint that a doctor has been negligent in treating a medical condition does not state a valid claim under the Eighth Amendment); *Jackson*, 90 F.3d at 332.

Here, it appears that Plaintiff was unhappy with three courses of action by Does 7-15: (1) the erroneous documentation of Plaintiff's father's medical history as Plaintiff's personal medical history; (2) the erroneous transfer of Plaintiff to CVSP, where he could not get full care because he was on psychiatric medication; and (3) the cancellation of Gabapentin and other medications.

Taking the allegations in the complaint and declaration as true, Plaintiff has failed establish that any individual purposefully disregarded an excessive risk to Plaintiff's health. Regarding the error in recording Plaintiff's father's heart disease as Plaintiff's own heart disease, Plaintiff has not established that correcting the error constituted a serious medical need. The existence of an error in a patient's medical history is not "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment...a medical condition that significantly affects

9

[Plaintiff's] daily activities...[or] chronic and substantial pain.'" *See Lopez* 203 F.3d at 1131. Plaintiff has failed to tie this error to an injury, and he has not demonstrated that the scrivener's error put his health at risk or harmed him in any manner. Thus, Plaintiff fails to state an Eighth Amendment claim related to the error in his medical history.

In addition, Plaintiff has failed to state a claim related to his transfer to CVSP.[3] Reading the complaint liberally, it appears that Plaintiff is alleging a delay in medical care due to the initial transfer to CVSP, since it took three additional months to re-transfer him to an appropriate facility. (Shehata Decl. ¶¶ 21-25.) However, Plaintiff does not allege that any individual at CIM knew that CVSP could not provide care to Plaintiff and purposefully transferred him there despite that knowledge. At most, the complaint permits an inference that someone at CIM mistakenly believed that CVSP was the appropriate facility. Finally, Plaintiff does not state how care for a serious medical need was denied by the transfer. Because negligence does not rise to the level of deliberate indifference, *Sanchez*, 891 F.2d at 242, Plaintiff has failed to state a claim related to his transfer from CIM to CVSP.

Finally, Plaintiff has failed to state a claim related to the cancellation of medications. Plaintiff alleges that a doctor at ASP cancelled his prescription for Gabapentin "without stating to me why this action was taken," and sometime thereafter, cancelled the

---

[3] To the extent Plaintiff claims his constitutional rights were violated by being transferred to the wrong institution, he has failed to state a claim upon which relief may be granted. It is black letter law that a prisoner has no constitutional right to incarceration in a particular institution or housing unit. See *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983).

remainder of his medications. (Shehata Decl. ¶¶ 27-31.) Given these vague allegations, the Court has reviewed the numerous documents attached to the complaint[4] to locate any facts supporting an inference that these cancellations reflect deliberate indifference to Plaintiff's serious medical needs. While there are two sets of medical notes indicating that a medical staff person cancelled Gabapentin, both cancellations were because Gabapentin was "not medically indicated." (*See* Attach. to Compl. at 42-45.) The cancellation of Gabapentin was affirmed in an administrative appeal because Plaintiff "Does not meet the criteria for Gabapentin." (*Id.*)

As discussed above, Plaintiff's disagreement with the course of medical treatment does not rise to the level of an Eighth Amendment violation. *Estelle*, 429 U.S. at 107. In addition, although the Court has scoured the attachments to the complaint, there is no indication that any other medications were cancelled. Plaintiff does not identify what additional medications were cancelled, nor does he assert that the alleged cancellation was done with deliberate indifference to a serious medical need. For these reasons, Plaintiff has failed to state an Eighth Amendment claim related to the cancellation of Gabapentin and other medications.

## III. Conclusion

After review and consideration of the complaint, the Court finds that it fails to state a claim on which relief may be granted as to

---

[4] The Court notes that Plaintiff failed to identify or number the attachments to the complaint. The Court has counted the pages in order to identify the documents to which it refers. To the extent that Plaintiff chooses to file an amended complaint, he is instructed to file exhibits and attachments in accordance with the local rules.

any of the 16 Defendants. Accordingly, the complaint is dismissed with leave to amend. If Plaintiff chooses to file a first amended complaint, he should provide the names of the Defendants and the facts supporting the allegations of constitutional misconduct against any defendant. It is hereby **ORDERED**:

1. All claims against all Defendants are dismissed with leave to amend as the complaint fails to allege a viable constitutional claim for violations of civil rights for the reasons stated above.

2. It is established that a *pro se* litigant must be given notice of the deficiencies of the complaint and an opportunity to amend the complaint to state a claim, unless it is absolutely clear the deficiencies of the complaint cannot be cured by amendment. *Karim-Panahi*, 839 F.2d at 623; *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987). Accordingly, if Plaintiff wishes to pursue this action against the dismissed Defendants, he may file a first amended complaint within **twenty-one (21) days** of the date of this Order, remedying each of the deficiencies discussed above. The first amended complaint must set forth all of the facts which support Plaintiff's claims and may not refer to the original complaint. Pursuant to Fed.R.Civ.P. 8, Plaintiff should make a short and plain statement of the facts underlying his claims in numbered paragraphs and omit legal and factual conclusions. The first amended complaint should be captioned "FIRST AMENDED COMPLAINT," and should bear this case name. The first amended complaint must clearly identify the specific acts on which the claims are based, as well as the names of the Doe Defendants, to the extent he knows them. It should include the date, time, place, and circumstances of the offending conduct, the full details of what each defendant did or failed to do, and the damage

or injury suffered by Plaintiff as a result.

Plaintiff is cautioned that he is responsible for presenting factually accurate information to the court. A knowing misrepresentation to the Court is punishable by sanction, including dismissal.

3. Plaintiff is cautioned that the failure to timely file a first amended complaint will be construed by the magistrate judge as his consent to dismissal of this action as to the defendants and claims outlined above.

4. The Court's deputy clerk shall serve on Plaintiff a copy of this memorandum and order and a blank civil rights complaint form bearing the case number assigned to this action and marked to show that it is a "First Amended Complaint." If Plaintiff chooses to continue prosecuting this action, Plaintiff must use this form to the extent possible and not simply attach other documents to it or attempt to incorporate claims by reference to the attachments. He may, however, attach additional pages to detail his allegations, if necessary.

Dated: September 9, 2010

_____
Marc L. Goldman
United States Magistrate Judge